IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARK SAMUEL LANDERS,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Petitioner,　　　　　　　)　　　　Case No. 2:06-cv-975
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
RALPH HOOKS,　　　　　　　　　　)　　　　(WO-DO NOT PUBLISH)
　　　　　　　　　　　　　　　　　)
　　　　　Respondent.　　　　　　　)

**MEMORANDUM OPINION AND ORDER**

Petitioner Mark Samuel Landers ("Landers") was convicted of capital murder in

the Circuit Court of Elmore County, Alabama in 1997.  Elmore County Circuit Judge

Bush sentenced Landers to life imprisonment without parole.  Landers now petitions the

Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. # 1).  For the

following reasons, that petition is due to be denied.

**I.  FACTUAL AND PROCEDURAL HISTORY**

A jury convicted Landers of killing Robert Landers, Sr., ("the victim") Landers's

father, for pecuniary gain or other valuable consideration under Alabama Code (1994) §

13A-5-40(a)(7).  This is a capital offense in Alabama.

On the night of February 12, 1992, Landers and his mother discovered the victim's

body and telephoned law enforcement.  A bulldozer was located on top of the left side of

the victim's body.  The bulldozer's engine was not running, but was in reverse gear.  The

bulldozer's blade was down.  A white dump truck hitched to a flat trailer was also located

at the scene.  There were no tracks from either the truck or the bulldozer in the immediate

vicinity of the body.  Landers told investigators that he and his father had been working at Landers's nearby lake house that day.  After finishing up, the men pulled the vehicles and equipment to the scene and drove the bulldozer onto the trailer.  Landers left while his father tied down the bulldozer.  Landers speculated that after he left, his father had likely attempted to unload the bulldozer from the trailer and had somehow fallen off the bulldozer, which then somehow ran over him.

Authorities could not locate any chain binders at the scene, either in the dump truck or on the trailer.[1]  On February 13, 1992, the day after the victim's body was found, the sheriff recovered a pair of plastic frame glasses from under one of the bulldozer's tracks.  Later testing revealed that type O blood, the same type as the victim's, was located on the glasses.

The authorities later attempted to reconstruct the alleged accident.  They determined that if the bulldozer had been backed off the trailer in the manner in which Landers described, the bulldozer would have left tracks and "backblading" marks in the ground.  Neither kind of mark was found at the scene.  They also determined that the bulldozer's blade would have to be raised in order for it to be backed down the ramp.  Once raised, hydraulic pressure keeps the blade in the raised position until the operator pulls a lever.

---

[1] Chain binders are used to tie down heavy equipment, like bulldozers, to prevent the equipment from sliding off the trailer during transport.

After initially receiving the victim's body, the state medical examiner Dr. James Lauridson determined that the injuries the victim suffered were consistent with being run over by a bulldozer.  Dr. Lauridson declared the death an accident and released the body for burial.  After conferring with the Alabama Bureau of Investigation, Dr. Lauridson exhumed the body and conducted a more complete autopsy.  The latter examination revealed head injuries that were not consistent with being run over by a bulldozer.  The victim's crushing injuries exhibited a horizontal pattern, while the skull fractures on the victim's left temple were vertically oriented.  Dr.  Lauridson concluded that due to the amount of hemorrhaging in the tissues surrounding the head injury and the fractures' orientation, the fractures in the left temple must have been the result of blunt force trauma inflicted before the victim was run over by the bulldozer.  Based on these findings, Dr. Lauridson ruled the death a homicide.

A grand jury indicted Landers on October 4, 1996.  The indictment accused Landers of "intentionally causing the death of Robert Landers, Sr. by running him over and crushing him with a bulldozer."  However, the state's theory at trial was that Landers had caused the blunt force trauma to the victim's head, and then staged the scene to look like a bulldozer accident.  This was supported by evidence from the victim's skull, testimony from the medical examiner, and the pair of glasses found at the scene.  The left arm of the glasses was bent, and the medical examiner testified that the defect in the glasses was consistent with the location of the blunt force trauma skull fractures.

3

At trial, the state presented evidence that Landers had a financial motive to kill his father.  Landers was the sole beneficiary of a $1,000,000 life insurance policy taken out on the victim's life less than six months before his death.  Landers paid the $37,580.00 yearly premiums out of his company's funds.[2]  On April 6, 1992, less than two months after the victim's death, Landers filed a claim on the life insurance policy.  Because the insured had died within two years of taking out the policy, the insurance company challenged the claim in federal court, but was unsuccessful.  Landers ultimately collected on the policy.

Financial records demonstrated that before the victim's death, Landers's construction company was facing significant financial trouble.  The company was past due on the majority of its loans and was engaged in several contract disputes with its customers.  Landers used nearly $200,000 of the insurance proceeds he received after the victim's death to settle one of those contract disputes.  The state also produced evidence at trial tending to show that Landers had a habit of filing false insurance claims.  Landers was fired from Allstate for filing false claims and encouraging others to do so.

---

[2] Landers testified during a deposition that his insurance agent provided a blank application to sign and that Landers signed the form before any financial information was filled out.  Landers also testified that his father had requested the insurance coverage as a part of his estate planning.  Much of the financial information included on the application form was incorrect, and Landers testified that his insurance agent pulled the numbers out of thin air, thinking that the insurance company would grant the application regardless of what financial information was included on the form.  Landers's insurance agent stood to make $17,000 in commission off of the life insurance policy.

4

The state called Landers's sister Victoria Landers Goolsby to the stand.  She testified that the victim had accused Landers of trying to run him over with a bulldozer only six days before the victim was killed.

After Landers's trial and sentencing, his mother found a glasses case, allegedly given to her by law enforcement the night of the victim's death, which she claims contains the victim's actual glasses.  At trial, Landers presented evidence suggesting that the victim's glasses were wire-rimmed, and therefore that the plastic-rimmed glasses found underneath the bulldozer did not belong to the victim.  Landers argues this new evidence demonstrates that the glasses found at the scene were not the victim's, and therefore that the state's evidence regarding the glasses could not support his conviction. At trial, his mother testified that the sheriff had offered her the victim's rings, wallet, and glasses on the night the body was discovered.  Mrs. Landers recalled taking the wallet and rings, but refusing the glasses, as they were prescription and she would have no use for them.  This testimony conflicted with the sheriff's testimony that the glasses were not found on the scene until the next morning.

After his motion for new trial was denied, Landers appealed his conviction to the Court of Criminal Appeals on the grounds that:

 (1) the evidence was insufficient to sustain his conviction;

(2) the trial court erred in denying his motion to dismiss the indictment, or in the alternative suppress certain evidence;

(3) the trial court denied his challenges for cause as to five prospective jurors;

(4) the trial court erred in denying his motion for change of venue;

(5) the trial court erred in allowing evidence of "collateral" conduct to be admitted, including evidence regarding the existence of the life insurance policy;

(6) the trial court erred in allowing Landers's sister to testify about the incident six days before the victim's death;

(7) the trial court erred in allowing evidence regarding the state's reconstruction but precluding evidence of the defendant's experiment;

(8) the trial court erred in denying his motion to continue closing arguments after defense counsel's father died;

(9) the trial court erred in refusing to give five of Landers's requested jury instructions;

(10) the trial court erred in instructing the jury that evidence of collateral conduct could only be used for showing motive, plan, or knowledge; and

(11) the trial court erred in denying his motion for new trial.

The Court of Criminal Appeals affirmed Landers's conviction in an unpublished opinion on December 15, 2000.  *Landers v. State*, 820 So. 2d 167 (Table) (Ala. Crim. App. 2000). The court denied Landers's petition for rehearing without an opinion on March 2, 2001.

*Landers v. State*, 821 So. 2d 1029 (Table) (Ala. Crim. App. 2001).  Landers then appealed

to the Alabama Supreme Court.  The Alabama Supreme Court initially granted his writ of

certiorari, but quashed the writ on June 18, 2004 after receiving the parties' briefs.  *Ex*

*parte Landers*, 916 So. 2d 632 (Table) (Ala. 2004).

On May 31, 2005, Landers filed a Rule 32 petition for relief from judgment in the

Circuit Court of Elmore County challenging his conviction on the grounds that:

(1) the state violated *Brady v. Maryland* [3] by failing to turn over blood

evidence taken from the frame of the victim's glasses;

(2) the state violated *Brady v. Maryland* by failing to turn over blood

evidence taken from the lens of the victim's glasses;

(3) the state violated *Brady v. Maryland* by failing to turn over the medical

examiner's notes;

(4) the trial court violated his due process rights by refusing to postpone

closing arguments after defense counsel's father died;

(5) the State violated his due process rights and right to a fair trial by

delaying his indictment;

(6) the State violated his due process rights and right to a fair trial by failing

to disclose and correct false evidence;

(7) he possessed new evidence in the form of eyeglasses which established

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

his innocence;

(8) there was a fatal variance between the indictment and the proof offered at trial; and

(9) that the evidence presented at trial was insufficient to support the conviction.

In a written order dated September 23, 2005, Circuit Judge Bush found that Landers's claims were either precluded from review based on Alabama Rule of Criminal Procedure 32 or were not meritorious.

Landers appealed the denial of his Rule 32 petition to the Court of Criminal Appeals, which affirmed the trial court's dismissal of Landers's petition. *Landers v. State*, 978 So. 2d 77 (Table) (Ala. Crim. App. 2006). In its unpublished memorandum opinion, the Court of Criminal Appeals agreed with the trial court's assessment that Landers's claims were procedurally precluded from review. The Court of Criminal Appeals denied Landers's petition for rehearing. *Landers*, 978 So. 2d 77 (Table).

Landers filed a petition for a writ of certiorari to the Alabama Supreme Court. The Alabama Supreme Court initially granted the writ, but later quashed it. *Ex parte Landers*, 992 So. 2d 805 (Table) (Ala. 2006). Landers filed the instant habeas corpus petition on October 30, 2006.[4] (Doc. # 1). He moved for leave to amend his petition, and on June 11, 2007 this Court granted his motion. (Docs. # 7 and 9). Landers filed a second motion

---

[4] The state agrees that Landers's petition is timely filed.

8

for leave to amend his petition on July 14, 2009, but later withdrew the motion.  (Docs. # 23, 28, 29).

## II.  LEGAL STANDARD

Section 2254 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "A federal court may not grant habeas relief unless the decision of the state court either was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Stephens v. Hall*, 407 F.3d 1195, 1201 (11th Cir. 2005) (quoting 28 U.S.C. § 2254(d)).

A state court decision is contrary to clearly established Federal law if "the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law" or if "the state confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from the Supreme Court precedent."  *Id.* at 1202.  A state decision is an unreasonable application of clearly established Federal law when it "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the

petitioner's case or unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Id.* An incorrect application of federal law is not sufficient to warrant habeas relief, as an "unreasonable application of federal law is different from an incorrect application of federal law." *Id.*

## III.  DISCUSSION

A district court must resolve all claims for relief raised in a petition for writ of habeas corpus regardless of whether habeas relief is ultimately granted or denied. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992). In this petition, Landers has raised eight grounds for relief. A summary of those grounds follows:

(1) Landers's Fifth, Sixth, and Fourteenth Amendment rights were violated because the indictment returned against him contained an allegation of death different than the evidence the state produced at trial;

(2) Landers's Fourteenth Amendment rights were violated because the evidence presented against him at trial was insufficient to support his conviction;

(3) Landers's Fourteenth Amendment rights were violated when the prosecutor failed to turn over certain physical evidence and destroyed or disposed of other physical evidence favorable to Landers;

(4) Landers's Fourteenth Amendment rights were violated when the prosecutor failed to disclose and/or destroyed the notes made by the medical

examiner during the first examination of the victim's body;

(5) Landers's Sixth and Fourteenth Amendment rights were violated when the trial judge refused to continue the closing arguments of the punishment phase of trial after the death of defense counsel's father;

(6) Landers's Fourteenth Amendment rights were violated when the state unduly delayed the prosecution against him;

(7) Landers's Fourteenth Amendment rights were violated when the state prevented him from presenting newly discovered evidence material to his defense; and

(8) Landers's Fourteenth Amendment rights were violated because the trial court did not have subject matter jurisdiction to try the case.

Landers requests an evidentiary hearing on his petition.  Because his petition is not meritorious, his request for a hearing is denied.

## A.  Exhaustion requirements

AEDPA requires that before obtaining habeas relief from a federal court, a state prisoner must exhaust the remedies available in the courts of the state.[5]  28 U.S.C. §

---

[5]  Exhaustion requires that the petitioner present his claims in "one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In Alabama, a complete round of established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to the Alabama Court of Criminal Appeals, and an application for discretionary review by the Alabama Supreme Court.  *See* Ala. R. App. P. 4, 39–40.

2254(b)(1)(A).  "This rule of comity reduces friction between the state and federal court systems by avoiding the "unseemliness' of a federal district court's overturning a state-court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). A petitioner has exhausted state-court remedies when those remedies are no longer available, regardless of the reason for their unavailability.  *Id.* at 92–93.  "Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted."  *Id.* at 93.  However, exhaustion in this sense does not entitle the petitioner to litigate his claims in federal court.  *Id.*  Instead, the claims are considered procedurally defaulted.  *Id.*; *McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar."); *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1998) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.").

    In this case, the state asserts that three of Landers's claims have not been exhausted—(1) that the state improperly failed to turn over or destroyed relevant physical evidence including (a) the victims skull, (b) the blood specimen collected from the frame

of the glasses found at the scene, (c) the blood specimen collected from the lens of the glasses, and (d) blood specimens collected from the victim's body; (2) that the state improperly failed to turn over the medical examiner's notes; and (3) that the trial judge erred by refusing to continue closing arguments after the death of defense counsel's father.  (Doc. # 6 at 19–27).  The state claims that each of these claims is unexhausted for different reasons, and accordingly each claim will be discussed independently below.

### 1.  Destruction of relevant physical evidence

#### a.  The victim's skull

Landers claims that the state violated his Fourteenth Amendment rights when it disposed of the victim's skull before allowing the defense to view or inspect the skull. This argument was not included as an independent ground for relief on direct appeal. However, Landers indirectly presented the issue by arguing that the trial court had erred by failing to suppress the medical examiner's testimony regarding the vertical fractures found in the victim's skull.  Landers argued that because the state had destroyed all of the victim's skull except that portion of the left temple exhibiting the vertical fractures, the defense team could not properly counter the examiner's testimony.  Therefore, Landers argues, his right to due process had been violated and his trial had been rendered fundamentally unfair.

The Court of Criminal Appeals found that Landers could not demonstrate that the state acted in bad faith in destroying the victim's skull. Applying the standard set out in

*Arizona v. Youngblood*, 488 U.S. 51 (1988), the Court of Criminal Appeals determined

that the state's destruction of the victim's skull was *not* a due process violation.[6]  After

the Court of Criminal Appeals denied his direct appeal, Landers applied for rehearing in

the Court of Criminal Appeals and a writ of certiorari to have his appeal heard by the

Alabama Supreme Court.

Both the Alabama Court of Criminal Appeals and the Alabama Supreme Court had

the opportunity to apply the relevant constitutional standard to the facts of Landers's case.

Accordingly, the Court finds that his claim as to the victim's skull was in fact exhausted.

Because the state of Alabama was given the opportunity on direct appeal to correct the

alleged constitutional violations, this Court may consider the merits of Landers's claim.

### b.  Blood specimen from glasses frame

In his Rule 32 petition, Landers argued that the state's failure to turn over the

blood specimen from the victim's glasses amounted to a violation of his rights to due

process.   The Court of Criminal Appeals found that Landers's argument was precluded

from review under Alabama Rule of Criminal Procedure 32.2(a) because the issues could

---

[6] The Court recognizes that the Alabama Court of Criminal Appeals went on to apply a less stringent state standard to Landers's claims as set out in *Ex parte Gingo*, 605 So. 2d 1237 (Ala. 1992).  However, because Landers presented the operative facts regarding his due process claim to the Alabama Court of Criminal Appeals, this Court finds that the Alabama Court of Criminal Appeals and the Alabama Supreme Court had a fair opportunity to apply the controlling federal principles.  Accordingly, the Alabama Court of Criminal Appeals' further application of state law standards did not affect whether the claim was exhausted.

have been, but were not, raised at trial or on appeal.  The state argues that Landers

neglected to argue either in his petition for rehearing or his briefs to the Alabama

Supreme Court that the Court of Criminal Appeals was incorrect in finding his claims

were precluded.  Accordingly, the state contends that Landers has failed to exhaust his

state law remedies and therefore that this claim is procedurally defaulted.

However, the Court need not determine whether or not this individual claim is

exhausted.  If Landers's Rule 32 petition did *not* exhaust the claim, Alabama Rule of

Criminal Procedure 32.2 now prevents him from seeking review of the claim on a

subsequent Rule 32 petition.  Because Landers's time for filing a Rule 32 petition has

passed, his claim is both technically exhausted and procedurally defaulted.  *See*

*Woodford*, 548 U.S. at 93.[7]  If Landers's Rule 32 petition did exhaust the claim, it is still

defaulted, as the Court of Criminal Appeals found that the issue could have been raised

on trial or appeal.  This will be discussed in more detail below.  However, because the

claim is procedurally defaulted regardless of whether it was properly exhausted, this

Court need not apply the exhaustion requirements to Landers's claim that the state

violated his due process rights by destroying the blood specimen found on the victim's

---

[7]  Alabama Rule of Criminal Procedure 32.2(c) provides that a petition for relief under Rule 32 must be filed within one year after the issuance of the certificate of judgment by the Court of Criminal Appeals.  The Alabama Supreme Court issued a certificate of judgment on Landers's direct appeal on June 18, 2004.  Accordingly, his time for filing a Rule 32 petition has passed, and any unexhausted claim would now be procedurally defaulted.  *See Woodford*, 548 U.S. at 93.

glasses frame.

### c. *Blood specimen from glasses lens*

Like his claim regarding blood from the glasses frame, Landers raised a claim regarding blood from the glasses lens in his Rule 32 petition.  The Alabama Court of Criminal Appeals found that the claim was precluded from review because it could have been, but was not, raised at trial.  Accordingly, as described above, this claim is procedurally defaulted regardless of whether Landers exhausted it.  The Court will therefore not apply the exhaustion requirements to this claim.

### d. *Blood specimens from the victim's body*

Last, Landers argues that the state violated his rights to due process by failing to turn over and/or destroying blood samples taken from the victim's body.  The state argues that Landers failed to present this claim for relief on both his direct appeal and his Rule 32 proceedings.  However, Landers did present this claim in his Rule 32 petition. Landers discusses in the section entitled "Ground A" how important the blood samples from both the glasses and the body of the victim were to the prosecution's case.  He alleges numerous times that he requested the blood specimens, but that both the forensic lab had either destroyed or consumed through testing both the blood from the victim's glasses and the samples taken from the body.  Landers also alleges that the state's failure to turn over the "blood specimens," presumably referring both to the blood found on the glasses and the blood taken from the victim, violated his due process rights.  However, on

16

appeal, the Court of Criminal Appeals overlooked Landers's claim that the state violated his due process rights by failing to turn over the vial of the victim's blood.  Instead, the court only considered Landers's claims that the state should have turned over the blood samples the state took from the two locations on the victim's glasses.  Nothing in the record indicates that Landers brought this oversight to the Court's attention.  Accordingly, the state courts did not get a fair opportunity to apply the prevailing constitutional standard to Landers's claim regarding the vial of blood.  Therefore, Landers's claim was not initially exhausted.

Alabama Rule of Criminal Procedure 32.2(c) provides that a petition for relief under Rule 32 must be filed within one year after the issuance of the certificate of judgment.  The Alabama Supreme Court issued a certificate of judgment on June 18, 2004.  Because Landers's time for filing a Rule 32 petition has passed, his claim is both technically exhausted and procedurally barred.  *See Woodford*, 548 U.S. at 93.

### 2.  *Destruction of medical examiner's notes*

Landers's fourth ground for relief on this petition is that the state violated his due process rights by destroying the medical examiner's notes.  The state argues that Landers has not exhausted this claim.  Landers raised this issue on his Rule 32 petition, but the Alabama Court of Criminal Appeals found that the claim was barred, as it could have been raised during trial or on appeal.  Therefore, as explained above in connection with the blood evidence, regardless of whether or not the claim was exhausted, it is now

procedurally defaulted. Accordingly, the Court need not apply the exhaustion requirements to this claim.

### 3. *Trial judge's refusal to continue closing arguments*

Landers's petition also alleges that the trial judge erred by refusing to continue the closing arguments of the trial after defense counsel's father died. The state argues that while this ground for relief was presented in the Rule 32 petition, and was appealed, the Court of Criminal Appeals failed to rule on the ground. This is factually incorrect. The Court of Criminal Appeals identified Landers's fourth ground for relief in the Rule 32 petition as follows: "[h]e was denied due process rights when the trial court refused to postpone closing arguments until after the funeral of his lead counsel's father." (Doc. # 6 Ex. F). The Court of Criminal Appeals then went on to explain that Landers's fourth ground, among others, was "precluded from review" because it was raised and addressed on direct appeal. *Id.* Landers also raised the ground in his petition for certiorari in the Alabama Supreme Court. (*See* Doc. # 6 Ex. I at 12).

Landers invoked one complete round of state appellate review with regard to his claim that the trial judge erred by failing to continue the trial after the death of defense counsel's father. The state of Alabama was therefore given the opportunity when reviewing Landers's Rule 32 petition to correct the alleged constitutional violations. Accordingly, Landers's claim was exhausted. However, as described below, the claim was procedurally defaulted when the Alabama Court of Criminal Appeals determined that

it was precluded from review.

**B.  Procedurally barred claims**

"The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).  Generally, "[f]ederal courts may not review a claim that the petitioner procedurally defaulted under state law if the last state court to review the claim stated clearly and expressly that its judgment rested on a procedural bar, and the bar presented an independent and adequate state ground for denying relief." *Baldwin v. Johnson*, 152 F.2d 1304, 1318 (11th Cir. 1998) (internal alternations omitted).

The Eleventh Circuit has established a three pronged test for determining whether or not a state law procedural ruling constitutes an independent and adequate state law ground for denying relief.  *See Card v. Dugger*, 911 F.2d 1494, 1516 (11th Cir. 1990). First, the last state court rendering a judgment in the case must clearly and expressly articulate that it is relying on state procedural rules to decide the federal law issue without reaching the merits.  *Id.*; *Judd*, 250 F.3d at 1313.  Second, the state's decision must be made solely on state law grounds, and not be "intertwined with an interpretation of federal law."  *Card*, 911 F.2d at 1516.  Third, the state procedural rule must not be applied in an arbitrary or unprecedented manner.  *Id.*  If the procedural rule is "manifestly unfair" as applied to the petitioner's federal constitutional claim, then the procedural rule

19

is not 'adequate' and cannot be the basis for a procedural default.  *Judd*, 250 F.3d at 1313.

A federal court may grant habeas relief even on a procedurally defaulted claim if the petitioner can establish cause for the default and prejudice from the asserted error.[8] *House v. Bell*, 547 U.S. 518, 536 (2006).  A federal court may also grant habeas relief on a procedurally defaulted claim if the petitioner can demonstrate that his incarceration is a miscarriage of justice or fundamentally unjust.  *See id.* ("In appropriate cases . . . the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'").  In *Schlup v. Delo*, the United States Supreme Court found that a claim of actual innocence may be enough to bring a petitioner within the "narrow class of cases" which implicate the fundamental-miscarriage-of-justice rule.  513 U.S. 298, 314 (1995).  In this way, the petitioner's "claim of innocence is thus 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

### 1.  *Claims decided on independent and adequate state procedural grounds*

The Alabama Court of Criminal Appeals reviewed, and denied on procedural

---

[8]  Landers does not argue—either in his petition, his amended petition, or his response to the state's answer—that he can establish either cause or prejudice.  He seems to rely solely on the argument that his claim for actual innocence is sufficient to allow the Court to review his constitutional claims on the merits.  Accordingly, the Court will not analyze whether Landers could meet the cause and prejudice standard.

grounds, almost all of the claims for relief that Landers brings in this habeas petition.

Landers claims, in the first amendment to his petition, that the procedural grounds that the

state courts relied upon were not independent and adequate, and therefore that his claims

are not procedurally defaulted.  All of the procedural grounds on which the Alabama

Court of Criminal Appeals relied are contained in Alabama Rule of Criminal Procedure

32.2.  The version of the rule in effect at the time the court denied Landers's Rule 32

petition states, in pertinent part:

> (a) PRECLUSION OF GROUNDS.  A petitioner will not be given relief
> under this rule based upon any ground:
>> (1) Which may still be raised on direct appeal under the
>> Alabama Rules of Appellate Procedure or by posttrial motion
>> under Rule 24; or
>> (2) Which was raised or addressed at trial; or
>> (3) Which could have been but was not raised at trial, unless
>> the ground for relief arises under Rule 32.1(b); or
>> (4) Which was raised or addressed on appeal or in any
>> previous collateral proceeding not dismissed pursuant to the
>> last sentence of Rule 32.1 as a petition that challenges
>> multiple judgments, whether or not the previous collateral
>> proceeding was adjudicated on the merits of the grounds
>> raised; or
>> (5) Which could have been but was not raised on appeal,
>> unless the ground for relief arises under Rule 32.1(b).[9]

---

[9]  Alabama Rule of Criminal Procedure 32.1 reads in part:

Subject to the limitations of Rule 32.2, any defendant who has been
convicted of a criminal offense may institute a proceeding in the court of
original conviction to secure appropriate relief on the ground that . . .

(b) The court was without jurisdiction to render judgment or to impose
sentence . . .

The Alabama Court of Criminal Appeals, the last state court to render an opinion on the merits of Landers's claims, found that almost every ground for relief contained in Landers's federal habeas petition was barred by Rule 32.2(a)(2), (3), or (4), or some combinations of those provisions.[10]   In rendering its decision affirming the circuit court's denial of Landers's Rule 32 petition, the Alabama Court of Criminal Appeals relied only on the state law procedural rules cited above.  Therefore, the court's decision clearly meets the first and second prongs of the *Card* test.  *See* 911 F.2d at 1516.  The only question that remains is whether or not the procedural rules applied were "adequate."  Landers has not provided the Court with a single piece of evidence to demonstrate that the rules were arbitrarily applied or unfairly applied in this case.  The Eleventh Circuit has previously found that Rule 32(a)(3) and (5) were adequate grounds capable of triggering a procedural default.  *See Brownlee v. Haley*, 306 F.3d 1043, 1065–66 (11th Cir. 2002); *Kennedy v. Hopper*, 156 F.3d 1143, 1147 (11th Cir. 1998) ("In addressing

---

A petition that challenges multiple judgments entered in more than a single trial or guilty-plea proceeding shall be dismissed without prejudice.

[10]   Landers's claim that the state violated his due process rights by destroying portions of the victim's skull before the defense could inspect it was not raised on Landers's Rule 32 petition.  It was instead raised on appeal, and the Court of Criminal Appeals rendered an opinion on the merits of that claim.  Accordingly, that claim was not procedurally defaulted, and this Court will review the merits of the claim with the deference due the state court decision. The Court of Criminal Appeals found that claim 1 was barred by Rule 32.2(a)(3), claim 2 by 32.2(a)(4), claim 4 by 32.2(a)(4), claim 5 by 32.2(a)(4), claim 6 by 32.2(a)(4), claim 7 by 32.2(a)(2), (3), and (4), and claim 8 by 32.2(a)(3).

petitions for collateral relief, Alabama courts have consistently deemed issues not raised on appeal to be procedurally defaulted under Ala. R. Crim. P. 32.2(a)(5)").

Because Landers cannot demonstrate that the state procedural rules were an inadequate state law ground, the procedural default will bar this Court's review of claims 1, 2, 4, and 5-8 unless Landers can demonstrate a sufficient claim of innocence.

### 2. *Landers's procedural claim of actual innocence*

In order to rise to the level of a fundamental miscarriage of justice, thereby triggering the exception to the procedural default rule, a petition alleging actual innocence must demonstrate that a constitutional error in his case "probably resulted" in the conviction of an innocent person. *Schlup*, 513 U.S. at 326–27. In other words, the petitioner must demonstrate that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. When determining whether a petitioner's claims meet the standard set out in *Schlup*, a court's focus should be on the "probative force of relevant evidence that was either excluded or unavailable at trial." *Id.* at 327–28.

In this case, Landers relies on the pair of wire-framed glasses that his mother discovered after Landers was convicted and sentenced. Landers claims that the wire-framed glasses are the victim's glasses, and that they refute the crux of the state's case against him. According to him, the state's case was based on the theory that Landers killed the victim by striking him in the head with a blunt object. The state supported that

23

theory with testimony from the medical examiner that the plastic-framed glasses found at the scene of the crime, and allegedly belonging to the victim, had a deformity in the left arm consistent with the head injury sustained by the victim.  Landers claims that the glasses his mother found do not have such a deformity.

The Court considers the probative value of the newly discovered glasses, if they are indeed newly discovered,[11] to be slim.  During trial, the defense presented substantial evidence to refute the state's claim that the plastic framed glasses found at the scene were not the victim's.  The defense presented the testimony of the convenience store clerk who saw the victim hours before his death and testified that he was wearing wire-framed glasses.  Landers's mother testified that her husband wore wire-framed glasses, and identified several photographs in which the victim was pictured wearing wire-framed glasses.  Landers's mother also testified that the sheriff had offered her the victim's glasses the night the body was found, which cast doubt on the state's argument that the glasses found at the scene the morning after were truly the victim's.  The defense also elicited testimony demonstrating that the scene was unsecured between the time that the body was found and the time that the glasses were found.  Therefore, the newly discovered glasses were not necessary to cast doubt on the state's theory, and likely would

---

[11]  Landers's mother testified at trial that the sheriff offered her the victim's glasses on the night the body was discovered.  Therefore, the defendant should have been alerted to the possible existence of a pair of glasses belonging to the victim other than the plastic ones offered by the state.

24

have added little probative weight to the evidence already admitted.

Landers contends that the new glasses would entirely refute the state's evidence regarding the plastic-framed glasses, thereby disproving the state's theory that the death was a homicide.  However, even if the jury disregarded all evidence regarding the plastic-framed glasses, they would still have evidence upon which to convict Landers for murder. In other words, the defect in the plastic glasses was not the only evidence of homicide. The medical examiner testified that there was a significant laceration above the victim's left temple and a vertically-oriented impact fracture in the skull at that point.  The medical examiner testified that the fracture in the left temple was inconsistent with an accidental crushing, and that the amount of blood in the tissues surrounding the wound indicates that the blunt force trauma occurred before the victim died.  The state also submitted pictures of the victim's skull and body, demonstrating the presence of the fracture and hemorrhaging.  Therefore, the plastic-framed glasses were not the state's only evidence that the victim's death was the result of a homicide, and a reasonable jury could have found that Landers killed his father even without the state's testimony regarding the glasses.

Landers has not demonstrated that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" when presented with the pair of glasses Landers's mother found.  *Schlup*, 513 U.S. at 326–27.  Accordingly, Landers has not overcome the procedural default of his claims, and this Court may not

grant him relief on any defaulted claim.

### 3. *Claims implicating subject matter jurisdiction*

In his habeas petition, Landers argues that the indictment returned against him was so flawed that the trial court did not have subject matter jurisdiction to enter a judgment against him. To support this, Landers points to the fact that the indictment alleges that Landers killed the victim by running him over with a bulldozer, but that the state offered proof at trial to show that Landers killed the victim with blunt force trauma to the head. Landers failed to raise this argument during trial or on direct appeal, but did include this claim in his Rule 32 petition. When adjudicating the Rule 32 petition, the Elmore County Circuit Court found that any variance in the indictment, if one existed, did not rise to the level of a jurisdictional issue. Because the claim could have been raised at trial or on appeal, the circuit court found that the claim was procedurally barred by Rule 32.2(a)(3). Rule 32.2(a)(3) prohibits relief for any ground "[w]hich could have been but was not raised at trial, unless the ground for relief arises under Rule 32.1(b)." Rule 32.1(b) provides that a petitioner may bring a claim alleging that the trial court lacked jurisdiction. The Court of Criminal Appeals upheld the circuit court's finding that the claim was procedurally barred, implicitly agreeing that the claim was not a jurisdictional one.

Landers now re-argues that because the variance deprived the circuit court of jurisdiction, that his claim falls within the category contemplated by 32.1(b), and that

26

32.2(a)(3) could not act to bar his claim.  However, the state court clearly found that the variance in Landers's indictment was not a fatal one and did not implicate the court's jurisdiction to render a judgment on the murder conviction.  That decision was a matter of state law.  *See Hunt v. Tucker*, 875 F. Supp. 1487, 1522 (N.D. Ala. 1995) ("The question of whether the state courts had jurisdiction is one for those courts.").  "Jurisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged." *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969).[12]

Landers has provided no citations in his petition which would indicate to this Court that the state circuit court's decision was in error.  Accordingly, this Court will not disturb the state court's decision that any variance in the indictment was not jurisdictional, and therefore that the claim was procedurally defaulted.[13]

### C.  Destruction of the victim's skull

Because Landers cannot demonstrate any exception to the procedural default rule, this Court cannot grant him relief on claims 1, 2, and 4-8.  The only claim that remains to

---

[12] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[13]  There may not even be a variance between the indictment and the state's proof. The medical examiner's testimony was that the victim was struck in the left temple before being run over by the bulldozer.  The medical examiner could not determine whether the blow to the head was the sole cause of death.  In other words, Dr. Lauridson testified that the victim may still have been alive when he was run over by the bulldozer.  The lack of hemorrhaging in the crushing injuries could be a sign that the victim was dead before he was run over, or that the bulldozer acted like a natural tourniquet that prevented blood from flowing to the injured areas.

be discussed on the merits is claim 3—that the state violated his rights to due process when it destroyed much of the victim's skull before the defense was able to inspect it. The state retained that portion of the skull that exhibited the vertically oriented fracture over the victim's left temple.

In *Arizona v. Youngblood*, the United States Supreme Court held that the state's failure to preserve potentially useful evidence does not constitute a denial of due process unless the criminal defendant can demonstrate bad faith on the part of the state. 488 U.S. 51, 58–59 (1988). Landers raised this claim on direct appeal, and the Alabama Court of Criminal Appeals found that Landers had not presented any evidence of bad faith on the part of the state. In his habeas petition in front of this Court, Landers includes no allegations of bad faith on the part of the state in its failure to preserve the victim's entire skull. Accordingly, this Court can find no reason why the state's decision in denying Landers's request for relief was contrary to established federal law, and Landers is not entitled to relief on this claim.

## IV. CONCLUSION

Landers has not demonstrated that he is entitled to relief on any of the claims presented in his habeas petition. Accordingly, it is hereby ORDERED that his petition is DENIED.

Done this the 8th day of June, 2011.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE

28